**MULGA COAL COMPANY, INC.,**
**Plaintiff-Appellee,**

v.

**UNITED STATES of America,**
**Defendant-Appellant.**

No. 86–7597.

United States Court of Appeals,
Eleventh Circuit.

Aug. 31, 1987.

Frank W. Donaldson, U.S. Atty., Caryl P. Privett, Asst. U.S. Atty., Birmingham, Ala., David English Carmack & Michael J. Roach, Michael L. Paup, Chief, Appellate Section, Tax Div., Dept. of Justice, Roger M. Olsen, Asst. Atty. Gen., Tax Div., Washington, D.C., for defendant-appellant.

Roy J. Crawford, Cabaniss, Johnston, Gardner, Dumas and O'Neal, Birmingham, Ala., for plaintiff-appellee.

Before TJOFLAT and ANDERSON, Circuit Judges, and HENDERSON, Senior Circuit Judge.

ANDERSON, Circuit Judge:

The question presented in this case is whether coal which the taxpayer, Mulga Coal Co. ("Mulga"), mined and used as fuel for the purpose of drying its own washed coal prior to shipment is subject to the excise tax of 50 cents per ton imposed by § 4121 of the Internal Revenue Code of 1954, 26 U.S.C. § 4121.[1] Because the district court correctly concluded that this fuel coal is not subject to the excise tax, we affirm.

## I. BACKGROUND

Mulga is a coal company which mines underground coal in Alabama. After the coal was removed from the mine, Mulga processed it for sale by washing, drying, sizing and blending it. In order to dry the coal, it was placed in dryers which used as fuel Mulga's own coal. On its returns, Mulga excluded the weight of the fuel coal used in its dryers from the total amount of coal which it mined and sold. Thus, Mulga contended that it was liable for excise tax under § 4121[2] only upon this lesser tonnage of coal which did not include the coal

---

1. The taxable quarters at issue in this case, i.e., the quarters ending June 30, 1978 through June 30, 1980, occurred prior to the Tax Reform Act of 1986. Hence, the operative tax provisions in this case are those provisions of the Internal Revenue Code of 1954 that were in force during 1978 through 1980. All references in this opinion are to the statutory provisions then in force.

2. This provision provides in relevant part that:

used as fuel in its dryers. When the IRS examined Mulga's excise tax returns, it concluded that the coal used as fuel in Mulga's dryers should be included in the total taxable tonnage of coal taxed. Accordingly, the IRS assessed an additional tax of $7,069.[3]

Mulga paid the additional taxes and thereafter filed a timely claim for refund. This claim was denied by the IRS and Mulga filed this suit for refund in the district court. The district court concluded that the coal mined by Mulga and used as fuel in its dryers was not subject to the excise tax imposed by § 4121. In reaching this conclusion, the district court relied upon two factors: (1) the language of the Treasury Regulations, Treas.Reg. § 48.4121–1; and (2) the perceived inconsistency between the government's treatment of coal fuel in this case and that adopted by the Tax Court in *Roundup Coal Mining Co. v. Commissioner*, 20 T.C. 388 (1953). Accordingly, the district court held that Mulga was entitled to judgment in its favor and ordered a refund of the excise tax paid on the coal used as fuel in its dryers. This appeal ensued.

## II. DISCUSSION

Section 4121 of the Internal Revenue Code imposes an excise tax on the sale of all coal produced from underground mines in the United States. As a general rule, the use of a product by the producer is considered equivalent to sale by the producer. 26 U.S.C. § 4218.[4] However, the Treasury Regulations provide an express interpretation that "use" in a mining process is not a taxable use, whereas "use" in

a nonmining process is a taxable use. In full, this regulation defining a taxable use of coal reads:

> For purposes of this section, the term "coal used by the producer" means use by the producer in other than a mining process. A mining process is determined the same way it is determined for percentage depletion purposes. For example, a producer who mines coal does not "use" the coal and thereby become liable for the tax merely because, before selling the coal, the producer breaks it, cleans it, sizes it, or applies one of the other processes listed in section 613(c)(4)(A) of the Code. In such a case, the producer will be liable for the tax only when he sells the coal. On the other hand, a producer who mines coal does become liable for the tax when he uses the coal as fuel, as an ingredient in making coke, or in another process not treated as "mining" under section 613(c).

Treas.Reg. § 48.4121–1(d)(3). Thus, coal used in a mining process is not taxable.

The question at issue in this case is: should coal used a fuel in a dryer to dry other mined coal be considered coal used in a mining process?

Treas.Reg. § 48.4121–1(d)(3) refers to percentage depletion rules, i.e., § 613(c)(4)(A) of the Internal Revenue Code, for definition of the term "mining process." Section 613(c)(4)(A), and applicable regulations and case law, define mining processes to include breaking, cleaning, washing, sizing, and other similar processes. Of significance in this case, drying coal is a mining process. *See Zonolite Co. v. United States*, 211 F.2d 508 (7th Cir.

---

(a) Tax imposed.—There is hereby imposed on coal sold by the producer a tax at the rates of—
  (1) 50 cents per ton in the case of coal from underground mines located in the United States....
26 U.S.C. § 4121 (1980).

**3.** Originally a tax of $7,435 was assessed. The parties are agreed that this amount should be modified to $7,069 to reflect a minor adjustment in the taxable weight of coal at issue.

**4.** This section provides that
  If any person manufactures, produces or imports an article ... and uses it ... then he shall be liable for tax under this chapter in the same manner as if such article were sold by him.
26 U.S.C. § 4218 (1980).

1974); *Union Carbide Corp.*, 75 T.C. 220 (1980), *aff'd*, 671 F.2d 67 (2d Cir.1982); Treas.Reg. § 1.613–4(f)(5)(iii) (providing that "[d]rying to remove free water, provided that such drying does not change the physical or chemical identity or composition of the mineral" constitutes a mining process).

Since the drying process is a mining process, it is obvious that, in one sense at least, coal used as a fuel to dry other coal is "used in a mining process." The question remains, however, whether the regulation meant the term "used in a mining process" to refer only to the coal actually being dried, as argued by the government, or to refer both to the coal being dried and the coal which was fueling the drying process, as the taxpayer argues. In this regard, the last sentence of Treas.Reg. § 48.4121–1(d)(3) is critical. That concluding sentence reads: "On the other hand, a producer who mines coal does become liable for the tax when he uses the coal as fuel, as an ingredient in making coke, or in another process not treated as 'mining' under § 613(c)."

We think this final sentence is susceptible of two possible readings. The interpretation urged by the government is that the use of coal as fuel is always a process not treated as mining under § 613(c) and hence such a use is always taxable as outside the mining process. This reading suggests that coal used as fuel is a special category which is never exempt from taxation. The interpretation urged by Mulga is that coal used as fuel is taxable only when it is used in another process not treated as mining; i.e., that coal used as fuel for drying (a mining process) is nontaxable while coal used, for example, as fuel to run a utility plant (a non-mining process) is taxable.

The interpretation favored by Mulga is supported by the language of the balance of the regulation, i.e., the language "coal used by the producer means use by the producer in other than a mining process."

The natural and reasonable intent of such language is that coal used triggers taxation only when it is used in a nonmining process. More importantly, Mulga's interpretation is supported by the case law.[5] In *Roundup Coal Mining Co. v. Commissioner*, 20 T.C. 388 (1953), the Tax Court held that coal used as a fuel in taxpayer's boiler to fuel its mining operations could not be included as part of its gross income from the property, for percentage depletion purposes, because the taxpayer had realized no gross income from such use. The taxpayer in *Roundup* thus was denied percentage depletion on the fuel coal. The Treasury Regulations expressly provide that, for the excise tax, "[a] mining process is determined the same way it is determined for percentage depletion purposes." Since coal used as a fuel in a mining process is not treated as having been "sold" for percentage depletion purposes, it would be anomolous to treat the same coal as having been "sold" for purposes of the excise tax. The government's interpretation would treat the coal as not having been "sold" in order to deny the taxpayer the benefit of percentage depletion, but at the same time treat the same coal as having been "sold" in order to trigger liability under the instant excise tax. When the Internal Revenue Service has, by its own excise tax regulations, incorporated percentage depletion principles, its attempt to disown the percentage depletion case law must be rejected.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

**5.** The parties have called our attention only to the *Roundup* case discussed in text. Our independent research has revealed no other relevant case law.